UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 1:19-cv-24300-MGC**

IBALDO ARENCIBIA,

     Plaintiff,

vs.

                                           **CLASS ACTION**

AGA SERVICE COMPANY, et al.,

     Defendants.

_____/

**DEFENDANTS AGA SERVICE COMPANY AND JEFFERSON
INSURANCE COMPANY'S MOTION TO DISMISS**

     Defendants, AGA Service Company d/b/a Allianz Global Assistance ("Allianz") and Jefferson Insurance Company ("Jefferson"), move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all counts of the Class Action Complaint [ECF No. 1] filed by Plaintiff, Ibaldo Arencibia ("Plaintiff").  The grounds for this motion are set forth in the following memorandum of law.

<u>**THE ALLEGATIONS OF THE COMPLAINT**</u>

     Plaintiff alleges that he purchased an airline ticket on American Airlines' ("AA") website on August 17, 2019 to fly from Miami, Florida to Bogota, Colombia on October 22, 2019.  Complaint, ¶ 18.  During the online booking process, Plaintiff also purchased travel insurance on the AA website from Allianz for $36.83.  *Id.* at ¶¶ 18-19.  Plaintiff states that the Allianz offer box appeared "substantially similar or equal to the image[]" below:



Trip Insurance

Prepare for the unexpected

( • Required)

Add Trip Insurance? •

○ **Yes**, protect my trip for a total of **$57.06**.  ✓ Recommended
Includes trip cancellation, trip interruption, travel and baggage delay, and more.

"It's wise to always consider a travel protection plan to cover your trip costs from the unexpected." – Frommer's, May 2016

○ No, I choose not to protect my **$877.90** purchase. I understand by declining coverage I am responsible for all cancellation fees and expenses.

Terms, conditions and exclusions apply. See coverage details ⧉.

Complaint, ¶ 19 n.5.  Notably, the Allianz offer box plainly states that "Terms, conditions and exclusions apply" and provided a hyperlink to those terms, conditions, and exclusions. *Id.*

Plaintiff alleges that sometime after booking his flight to Bogota and paying for travel insurance, he was offered lucrative temporary employment in the United States "on days that overlapped the already purchased Bogota trip." *Id.* at ¶ 20.  Plaintiff alleges that he telephoned Allianz and was told that "his work conflict was not covered under his [Allianz] policy" and that he should cancel his flight to Bogota and submit a claim for travel insurance benefits to Allianz "to see what could be done." *Id.* at ¶ 21.  Plaintiff claims that he submitted a claim for benefits to Allianz on September 2, 2019, *id.* at ¶ 22, but that Allianz denied the claim because the "insuring agreement … covers only the specific situations, events and losses included in this document, and only under the conditions we describe.  Unfortunately, trip cancellation due to being required to work is not included among those reasons." *Id.* at ¶ 23, Ex. B.

Plaintiff alleges that Allianz's offer to sell travel insurance was misleading and deceptive.  Plaintiff says that he was misled into believing "that if he chose the insurance option, *he would not be responsible for any cancellation fees and would be reimbursed the price of his flight* – i.e., that he would be insured." Complaint, ¶ 19 (emphasis supplied).  Plaintiff makes similar allegations throughout his Complaint:

- "Like [Plaintiff], a reasonable consumer" would be deceived into believing that "Allianz's insurance provides *broad, no-fault insurance protection and coverage*, and that should one choose to purchase this insurance, one would not be "responsible for all cancellation fees and expenses." Complaint, ¶ 26 (emphasis supplied).

- "Like [Plaintiff], a reasonable person would not understand that, when purchasing a product for $36.83 to insure a flight worth $491.03, one would have to hire an attorney to read and interpret sophisticated contractual documents which actually contradict or are different from the very essence of the sweeping offer of insurance 'protection.'" Complaint, ¶ 27.

- "Like [Plaintiff], a reasonable person would understand 'trip cancellation' to mean that, if one cannot travel, one is protected when the trip is "cancelled." Complaint, ¶ 33.

- "[T]he resulting net impression created in [Plaintiff] and other similarly situated putative Class Members, based on Allianz's offer and representations, is that they were receiving *a broad-range, no-fault travel protection insurance package*." Complaint, ¶ 35 (emphasis supplied).

Plaintiff also alleges that "Allianz's post-purchase emails are equally misleading." Complaint, ¶ 43.  For example, Allianz emails its customers saying, "Allianz's 'insurance policy' is provided to consumers only after payment is made (simultaneously with the flight ticket payment), through a separate link that then leads the purchaser to a 36-page sophisticated legal document that is, in nature and substance, different from the offer conveyed to consumers pre-payment."  Complaint, ¶ 44.  Plaintiff fails, however, to acknowledge in his Complaint that he had the right to review the terms of the Allianz travel insurance policy and *to cancel the policy for any reason* within 10 days of purchase.[1]

With regard to Jefferson, Plaintiff alleges that "as the signer of the policy, [Jefferson] is well aware of its contents and knows that, in essence and substance, the travel insurance policy is narrowly limited to medical emergencies or catastrophic events, in contradiction to the offer of insurance its partners, Allianz and AA, make to consumers at the time of purchase."  Complaint, ¶ 64.  "Although it is aware of the policy and its limitations, Jefferson decides to participate in this scheme because it profits millions of dollars from it."  *Id.* at ¶ 65.

Plaintiff alleges five claims against Allianz and Jefferson:

Count I:      Declaratory relief;

Count II:     Unjust enrichment;

Count III:    Violation of the Florida Deceptive and Unfair Trade Practice Act, § 501.201, *et seq.*, Fla. Stat. ("FDUTPA");

Count IV:     Violation of the Racketeer Influenced and Corrupt Organization

---

[1]  The travel policy states:

> Since your satisfaction is our priority, we are pleased to give you 10 days to review your policy. *If, during this 10-day period, you are not completely satisfied for any reason, you may cancel your policy and receive a full refund.*  If, after 10 days of purchasing your policy, you cancel your policy, we will provide a refund of any unearned premium as long as your trip has not started and you have not filed a claim.

Complaint, at ¶ 44, Ex. C [ECF No. 1-3, at 1 of 36 (emphasis supplied); *see also* ECF No. 1-3, at 6 & 25 of 36.  Plaintiff also fails to recite in his Complaint that the travel insurance policy he purchased expressly provides that "[i]f *your trip* is canceled or rescheduled for a *covered reason* listed below, *we* will reimburse *you* for *your* nonrefundable *trip* payments, deposits, cancellation fees, and costs to rebook *your* transportation (less available *refunds*), up to the maximum benefit for Trip Cancellation Coverage," but that electing to cancel a flight because the insured received a lucrative job opportunity is not a "covered reason." Complaint, Ex. C, "TRIP CANCELLATION COVERAGE" [ECF No. 1-3, at 12 of 36] (italics in original).

3

Act, 18 U.S.C. 1961, *et seq.* ("RICO"); and,

Count V:    Violation of § 817.40, Fla. Stat., for false, misleading and deceptive advertising.

### THE CLASS ALLEGATIONS

Plaintiff seeks to certify a class consisting of "[a]ll persons who purchased a trip insurance policy from Allianz through AA's website within the applicable limitations period (the 'Class Period')."  Complaint, ¶ 66.  Plaintiff alleges, *inter alia*, that "this class action satisfies the typicality requirement of Fed. R. Civ. P. 23(a)(3) as the claims made by the named Plaintiff are similar to those of the other members of the Class.  For example, most putative Class Members are exposed, through AA's website, to an equally misleading offer of insurance for which they are not reimbursed when trips are cancelled."  Complaint, ¶ 70.

### ALL COUNTS OF THE COMPLAINT ARE LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED

All of Plaintiff's claims are legally insufficient and should be dismissed for failure to state a claim upon which relief can be granted.

As a threshold matter, all counts of the Complaint are based on the wishful, but fatally flawed, premise that Allianz and Jefferson offered travel insurance that covered cancellation of flights *irrespective of the reason for cancellation*.  However, Plaintiff admits that (a) travel insurance was offered by Allianz subject to applicable "terms, conditions and exclusions," as disclosed in the Allianz offer box on the AA website, *see* Complaint, ¶ 19 n.5, which contains a hyperlink to additional information – including the policy, (b) the travel policy attached to the Complaint reflects that no coverage exists for cancellations due to work conflicts, *see id.* at Ex. C [ECF No. 1-3, at 12 of 36], and (c) that he was advised in three different sections of the policy documentation that he had a 10 day unconditional right to cancel the policy, *see id.* [ECF No. 1-3, at 1, 6 & 25 of 36].  These concessions fatally undermine each of Plaintiff's claims.  "If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R. Civ. P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."  *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).  Moreover, "[a] party cannot recover for alleged false misrepresentations that are adequately dealt with or expressly contradicted in a later written contract."  *TRG Night Hawk Ltd. v. Registry Dev. Corp.*, 17 So. 3d 782, 784 (Fla. 2d DCA 2009).  Lastly, all counts of the Complaint

are also preempted by Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.

Count II for unjust enrichment must also be dismissed for the independent reason that there is no implied private right of action in Florida for damages caused by false or deceptive representations concerning coverage afforded under an insurance policy. Although the Florida Legislature has prohibited the making of false, misleading, or deceptive statements in connection with the sale or advertisement of insurance, § 626.9541(1)(a) and (b), Fla. Stat., an aggrieved person has no private right of action to enforce § 626.9541(1)(a) and (b). *Joseph v. Bernstein*, 612 F. App'x. 551, 557 (11th Cir. 2015). "[P]laintiffs may not evade the Florida legislature's decision to withhold a statutory cause of action for violations of the pertinent provisions of [Florida Unfair Insurance Trade Practices Act] by asserting common law claims based on such violations." *Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907, 909 (11th Cir. 2008). Moreover, because Plaintiff admits that he has a contract of insurance with Jefferson, the insurer, there is no viable claim for unjust enrichment. *BAC Fin. Servs., Inc. v. Multinational Life Ins. Co.*, 2013 WL 5929428, at *4 (S.D. Fla. Nov. 5, 2013) ("an unjust-enrichment claim lies only in the absence of an express contract").

Count III for violation of FDUTPA must be dismissed because FDUTPA, by its express terms, "does not apply" to any "*person or activity* regulated under laws administered by" the "Office of Insurance Regulation of the Financial Services Commission" and "the former Department of Insurance which are now administered by the Department of Financial Services." *See* § 501.212(4), Fla. Stat. (emphasis added). Because Allianz and Jefferson are persons regulated by these state regulatory agencies, *see* § 624.401(3), Fla. Stat., and "unfair or deceptive" conduct in the sale or advertisement of insurance are also regulated by the same agencies, *see* § 626.9561, Fla. Stat; § 626.9541(a) and (b), Fla. Stat., the FDUTPA claim must be dismissed. *E.g., Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Vinardell Power Sys., Inc.*, 2019 WL 1440383, at *3 (S.D. Fla. Apr. 1, 2019) (dismissing FDUTPA claim because the defendant insurance company and alleged misconduct are both regulated by Florida Department of Financial Services).

Count IV for RICO is preempted by the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), which "precludes application of a federal statute in [the] face of state law enacted ... for the purpose of regulating the business of insurance, if the federal measure does not specifically relat[e] to the business of insurance, and would invalidate, impair, or supersede the State's

law." *Humana, Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (quotations omitted). Because the Florida Unfair Insurance Trade Practices Act ("FUITPA"), § 626.951, *et seq.*, Fla. Stat. does not permit a private right action for violations of § 626.9541, Fla. Stat., allowing Plaintiff's RICO claim to proceed would invalidate, impair, or supersede Florida insurance law by affording Plaintiff civil remedies precluded by FUITPA. *See, e.g., Kondell v. Blue Cross and Blue Shield of Fla., Inc.*, 187 F. Supp. 3d 1348, 1360 (S.D. Fla. 2016) (RICO claim predicated on deceptive and misleading insurance practices barred by McCarran-Ferguson Act because RICO claim would "impair" Florida insurance law). In addition to preemption, Plaintiff has failed to allege causation or the existence of a RICO enterprise to state a claim for relief under the RICO Act.

Count V for false, misleading and deceptive advertising in violation of § 817.40, Fla. Stat., is barred by express terms of § 817.47, Fla. Stat., which state that "[n]othing in ss. 817.40, 817.41, 817.43-817.45, and 817.47 [Fla. Stat.] shall be deemed to apply to advertising in connection with sales of insurance which are regulated under the insurance laws of this state." Furthermore, since Florida does not permit a private right of action based on deceptive advertising in connection with sales of insurance, *see Joseph*, 612 F. App'x. at 557; § 626.9541(1)(b), Fla. Stat., Count V must also be dismissed for this independent reason.

Count I for declaratory relief cannot stand if Plaintiff is unable to allege any legally sufficient substantive claims. The Declaratory Judgment Act neither expands jurisdiction nor provides an independent cause of action. A court may only enter a declaratory judgment in favor of a party who has a viable substantive claim for relief. *Padilla v. Porsche Cars North America, Inc.*, 391 F. Supp. 3d 1108, 1119-20 (S.D. Fla. May 21, 2019) ("Declaratory relief is a procedural device which depends on an underlying substantive cause of action and cannot stand on its own. Since Plaintiffs' substantive claims have all been dismissed, the claim for declaratory relief is also dismissed.") (citations omitted).

Lastly, Plaintiff's attempt to assert claims on behalf of a putative class for misleading and deceptive insurance practices is unavailing as a matter of law.[2] "[F]raud claims are inappropriate for class treatment as a matter of law." *Buell*, 2007 WL 1296347, at *2 (M.D.

---

[2] Because the impropriety of a class action in this case "is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification." *Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012).

Fla. May 1, 2007).  A nationwide class cannot be premised on FDUTPA violations because "FDUTPA applies only to actions that occurred within the state of Florida." *Carnival Corp. v. Rolls-Royce PLC*, 2009 WL 3861450, *6 (S.D. Fla. Nov. 17, 2009).  A nationwide class treatment is also inappropriate for unjust enrichment claims because "the substantial variations in law among the fifty states [regarding unjust enrichment] 'swamp any common issues and defeat predominance,'" *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913, at *6 (S.D. Fla. Jan. 10, 2013), and "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).  Likewise, a nationwide class for false advertising of insurance products under § 817.40, Fla. Stat. is improper because such claims are limited to misleading advertisements "made or disseminated before the general public of the state." § 817.41, Fla. Stat.

## STANDARD OF REVIEW ON MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *ADT LLC v. Vivint, Inc.*, 2017 WL 5640725, *2 (S.D. Fla. Aug. 3, 2017). "In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *ADT,* 2017 WL 5640725, *2.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "Dismissal is therefore permitted 'when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (citation omitted).

RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Federal Rule of Civil Procedure 9(b). *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). This is especially true where the claim "arises from an alleged pattern of racketeering consisting of fraud." Fraud based RICO allegations "must comply … with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard." *Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1336 (S.D. Fla. 2015).

"Under Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id.*

## ARGUMENT

**A.    All of Plaintiff's Claims Are Foreclosed by the "Terms, Conditions and Exclusions" Quoted in the Allianz Offer Box on AA's Website and in the Travel Policy**

The gravamen of all of Plaintiff's claims is that he was deceived into purchasing travel insurance because he believed he could cancel his AA flight to Bogota for any reason and would be refunded his ticket purchase price. *See* Complaint, ¶ 19 ("In other words, [Plaintiff] thought, logically, that if he chose the insurance option, he would not be responsible for any cancellation fees and would be reimbursed the price of his flight – i.e., that he would be insured."). In the same breath, however, Plaintiff concedes that the travel insurance policy offered was subject to applicable "terms, conditions and exclusions," as plainly disclosed on Allianz's offer box on AA's website. *See* Complaint, ¶ 19 n.5. Those "terms, conditions and exclusions" were easily accessible to Plaintiff by clicking on the hyperlink in the offer box. *Id.* Moreover, the travel insurance policy purchased by Plaintiff expressly provides that "[i]f *your trip* is canceled or rescheduled for a *covered reason* listed below, *we* will reimburse *you* for *your* nonrefundable *trip* payments, deposits, cancellation fees, and costs to rebook *your* transportation (less available *refunds*), up to the maximum benefit for Trip Cancellation Coverage," *see* Complaint, Ex. C, "TRIP CANCELLATION COVERAGE" [ECF No. 1-3, Page 12 of 36] (italics in original), but that electing to cancel a flight because the insured received a lucrative job opportunity is not a "covered reason" under the policy. *See* Complaint, Ex. C, "Covered Reasons" [ECF No. 1-3, at 12-14 of 36].[3]

When the exhibits to the complaint contradict and refute the allegations of the complaint, the complaint must be dismissed. "If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed. R. Civ. P., reveals facts which

---

[3] All of the Plaintiff's foundational factual allegations, including the website disclosure and travel insurance policy, are incorporated into each of the five counts of the Complaint. *See* Complaint, ¶¶ 77, 88, 94, 103, and 116.

foreclose recovery as a matter of law, dismissal is appropriate." *Griffin Ind.,* 496 F.3d at 1206 (quoting *Associated Builders, Inc. v. Ala. Power Co.,* 505 F.2d 97, 100 (5th Cir. 1974)).  In Florida, "[i]nsurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993).  "Thus, an insured is entitled only to the coverage set forth in the agreement between the parties." *Kondell*, 187 F. Supp. at 1348.  Plaintiff candidly admits in his Complaint that there was, in fact, no cancellation coverage under the travel policy because Plaintiff elected to take a temporary job which conflicted with his Bogota flight.  Complaint, ¶ 39 (acknowledging the circumstances in which coverage exists, which do not include employment conflicts).[4]  The unambiguous terms of Plaintiff's policy, therefore, fatally undermine his implausible claim that he was misled or deceived into believing that he could cancel his flight to Bogota for any reason and still be entitled to coverage.

In similar vein, Florida law does not allow a party to claim fraud or deception when the subject of the alleged fraud or deception is contradicted by the plain wording of the contract documents.  *TRG Night Hawk*, 17 So. 3d at 784.  "Further, a party who signs a contract whose terms contradict the alleged misrepresentations on which he relied is barred "from seeking relief pursuant to FDUTPA, as he acted unreasonably." *Id.* at 784; *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1368 (S.D. Fla. 2003) (in dismissing FDUTPA claim, court held that a party has no right to rely upon alleged oral misrepresentations that are adequately covered and expressly contradicted in a later written contract."); *Kennedy v. Deschenes,* 2017 WL 2223050, at *4 (S.D. Fla. May 19, 2017) (under Florida law, a party cannot recover in fraud for alleged misrepresentations that are adequately covered or expressly contradicted in a later written contract).  The unambiguous terms of Plaintiff's policy irrefutably contradict his claim that he was deceived about the trip cancellation coverage that he purchased.

Although Plaintiff bemoans the fact that he was required to read the policy in order to understand the coverages and exclusions, Complaint, ¶ 27, the law does not relieve a policyholder from the terms of the policy because he was too indifferent or lazy to read its contents.  *Quality Foods, Inc. v. U.S. Fire Ins. Co.*, 715 F.2d 539, 542 (11th Cir. 1983) ("A person

---

[4]  Indeed, the subject travel policy confirms there is no coverage.  *See* Complaint, Ex. C, "TRIP CANCELLATION COVERAGE" [ECF No. 1-3, Page 12 of 36]; *see supra* n.1.

who executes a written document in ignorance of its contents cannot plead ignorance in order to avoid the effect of the document.").[5]  Moreover, "a party's failure to read a contract will not support a claim of fraud in the factum."[6]  *Geico Marine Ins. Co. v. Treasure Coast Maritime, Inc.*, 2019 WL 467854, at *3 (S.D. Fla. Feb. 6, 2019).  Because each of the claims alleged in the five counts of the Complaint is contradicted by the plain wording of the subject travel policy, the Complaint should be dismissed in its entirety, with prejudice.

### B.    All of Plaintiff's Claims Are Preempted by the Airline Deregulation Act

All counts of the Complaint are also preempted by Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.  The ADA preempts state-law claims that are "related to" – that is, those that have "a connection with, or reference to" – an airline's prices, routes, or services. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (ADA expresses a broad preemptive purpose that prevents litigants from asserting claims against an airline related to the airline's prices, routes or services).  Because all of Plaintiff's claims have a connection with or reference airline prices, routes, or services, they are preempted under the ADA.  Allianz and Jefferson incorporate the grounds in support of ADA preemption set forth in AA's motion to dismiss.

### C.    The Unjust Enrichment Claim Is Barred by the Florida Unfair Insurance Trade Practices Act and the Contract of Travel Insurance

#### 1.    The Florida Unfair Insurance Trade Practices Act Bars the Claim for Unjust Enrichment

In the teeth of the policy terms that refute his claims, Plaintiff alleges in Count II that as a result of the deceptive and misleading offer and sale of travel insurance, Allianz and Jefferson were unjustly enriched at the expense of Plaintiff.  However, because the Florida Unfair Insurance Trade Practices Act ("FUITPA"), § 626.951, *et seq.*, Fla. Stat. preempts all private rights of action based on fraudulent or deceptive insurance practices that are regulated

---

[5]  As noted *supra* at f.n. 1, Plaintiff had 10 days after the policy's issuance to read the policy and to cancel it for any reason if he was dissatisfied with the coverages.  Complaint, at ¶ 44 & Ex. C [ECF No. 1-3, at 1, 6 & 25 of 36.

[6]  "[F]raud in the factum occurs when a party procures another party's signature to an instrument without knowledge of its true nature or contents."  *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 994-95 (11th Cir. 2012) (quotation omitted).

by the State of Florida, the unjust enrichment claim fails.

Although the Florida Legislature has prohibited the making of statements that "[m]isrepresent[] the benefits, advantages, conditions, or terms of any insurance policy" and the "advertisement … with respect to the business of insurance, which is untrue, deceptive, or misleading," § 626.9541(1)(a) and (b), Fla. Stat., an aggrieved person has no private right of action based on conduct that is otherwise violative of this statutory provision. *See Joseph*, 612 F. App'x. 551 at 557 ("Even if we liberally construe his complaint, Joseph alleged only that Defendants violated Fla. Stat. § 626.9541(1)(a)(1) by misrepresenting the terms of the life insurance policy they sold to Harold.   Again, Section 626.9541(1)(a)(1) is not one of the enumerated sections for which [Florida Unfair Insurance Trade Practices Act] provides a private cause of action."); *Buell v. Direct Gen. Ins. Agency, Inc.*, 488 F. Supp. 2d 1215, 1218 (M.D. Fla. Jun. 6, 2007) ("under the doctrine of statutory construction '*inclusio unius est exclusio alterious*,' the Florida legislature's express authorization to pursue a private right of action with regard to violations of specific provisions of [FUITPA] implies the legislature intended to exclude the pursuit of a private cause of action with regard to a violation of the other provisions of the [FUITPA], including section 626.9541(1)(z)"); *Kondell*, 187 F. Supp. 3d at 1359-60 (same); *Zarrella v. Pacific Life Ins. Co.*, 755 F. Supp. 2d 1218, 1229 (S.D. Fla. 2010) ("Plaintiffs cannot use negligence per se to create a private cause of action for alleged violations of § 626.9541(1)(a)1 and (b)4 because the legislature has not demonstrated an intent to create a private cause of action under these sections.").

It is well-settled that "[P]laintiffs may not evade the Florida legislature's decision to withhold a statutory cause of action for violations of the pertinent provisions of [Florida Unfair Insurance Trade Practices Act] by asserting common law claims based on such violations." *Buell*, 267 F. App'x at 909 (affirming dismissal of claims for rescission and money had and received based on violations of FUITPA for which there is no private right of action); *Hucke v. Kubra Data Transfer Ltd., Corp.*, 160 F. Supp. 3d 1320, 1323-27 (S.D. Fla. 2015) (dismissing with prejudice unjust enrichment claim based on violation of licensing statute where the statute did not provide for a private cause of action); *Sapuppo v. Allstate Floridian Ins. Co.*, 2013 WL 6925674, at *6 (N.D. Fla. Mar. 12, 2013) (because no private right of action exists to enforce the statutory provision governing the filed rate doctrine under Chapter 2007-1 of the Laws of Florida, plaintiff could not assert claims for, *inter alia*, unjust enrichment based

11

on violation of the same statute), *aff'd,* 739 F.3d 678 (11th Cir. 2014).

Since there is no private right of action to enforce § 626.9541(1)(a) and (b), Fla. Stat., Plaintiff cannot assert an unjust enrichment claim based on conduct that would constitute a violation of this statutory section.   Count II should be dismissed.   Because amendment of Count II would be futile, the dismissal should be with prejudice.   *Christman v. Walsh*, 416 F. App'x. 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."); *Jimenez v. Continental Serv. Gp. Inc. Conserve*, 2017 WL 2833441, at *5 (S.D. Fla. Jun. 30, 2017) ("Defendant's Validation Response expressly contradicts Plaintiff's conclusory allegations. As such, if given the opportunity to amend the complaint, Plaintiff would still be unable to state a sufficient cause of action.").

### 2.      The Unjust Enrichment Claim Is Also Barred by the Existence of the Contract of Insurance

Plaintiff admits that he has a contract of insurance with Jefferson, the insurer.   *See* Complaint, Ex. C [ECF No. 1-3, Page 3 of 36].   There is, therefore, no viable claim for unjust enrichment.   *E.g., BAC Fin. Servs., Inc.*, 2013 WL 5929428, at *4 ("an unjust-enrichment claim lies only in the absence of an express contract"); *Zarrella*, 755 F. Supp. 2d at 1227 ("The parties do not dispute the existence of an express contract governing their insurance policy agreement, so the equitable remedy of unjust enrichment is not available.").   For this independent reason, the unjust enrichment claim should be dismissed with prejudice. [7]

### D.      The FDUTPA Claim Is Barred by § 501.212(4), Fla Stat.

In Count III, Plaintiff alleges that Defendants made "deceptive and unfair" statements on AA's website in connection with the advertisement, offer and sale of travel insurance. Complaint, ¶¶ 99-100.   Plaintiff alleges that "Defendants' actions were unfair and deceptive in that they misrepresented the real contents of their travel insurance policy."   *Id.* at ¶ 98.

On its face, nothing in the Allianz offer box could plausibly mislead a reasonable

---

[7]   The unjust enrichment claim cannot be pled alternatively under Rule 8, Fed. R. Civ. P.   *In re Managed Care Litig.,* 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002) ("an unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute.").   Here Plaintiff admits the existence of the contract of insurance.   Complaint, ¶¶ 18-19, 39 & Ex. C [ECF No. 1-3, at 12 of 36].

consumer to believe that there were no "terms, conditions and exclusions" in connection with coverage. The claim does not survive an *Iqbal* analysis. Moreover, the FDUTPA claim fails because FDUTPA "does not apply" to any "*person* or *activity* regulated under laws administered by [Florida's] Office of Insurance Regulation of the Financial Services Commission … [or] by the Department of Financial Services." § 501.212(4), Fla. Stat. (emphasis supplied). Thus, *if either the defendant or the activity which is the subject of the FDUTPA claim* is regulated by the State of Florida, the claim must be dismissed. The allegations underlying Plaintiff's FDUTPA claim fall directly within the ambit of this broad statutory exclusion.

First, Plaintiff alleges that Jefferson is the "underwriter for the 'travel insurance' that Allianz sells," *see* Complaint, ¶ 3, and the travel policy attached to the Complaint states "[i]nsurance coverage is provided under Form 101-P-FL-802-2018 issued by Jefferson Insurance Company." Complaint, Ex. C [ECF No. 1-3, Page 3 of 36]. Plaintiff alleges that "Allianz is the main seller of the 'travel insurance' policy at issue in this case," Complaint, ¶ 2, and "is the licensed producer and administrator for this policy." Complaint, Ex. C [ECF No. 1-3, Page 3 of 36]. Allianz and Jefferson are, therefore, regulated exclusively by the State of Florida, § 624.401(3), Fla. Stat. ("This state hereby preempts the field of regulating insurers and their agents and representatives"); § 626.015(3), Fla. Stat. ("The term 'agent' includes an insurance producer or producer….).

Second, the activities allegedly engaged in by Allianz and Jefferson, i.e., the advertising, offer and sale of insurance, are likewise activities regulated exclusively by the State of Florida. § 626.9561, Fla. Stat. ("The department and office shall each have power within its respective regulatory jurisdiction to examine and investigate the affairs of every person involved in the business of insurance in this state in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by s. 626.9521,…."). Section 626.9541(1), Fla. Stat., in turn prohibits (a) the making of any "statement" that "[m]isrepresents the benefits, advantages, conditions, or terms of any insurance policy" and (b) the "making, publishing, disseminating, circulating, or placing before the public … [of] an advertisement … with

respect to the business of insurance, which is untrue, deceptive, or misleading."[8]

Because Allianz and Jefferson are entities regulated by the Florida Department of Financial Services and the alleged misconduct is also regulated by the Department of Financial Services, the FDUTPA claim must be dismissed.  *Nat'l Union Fire Ins.*, 2019 WL 1440383, at *3 ("National Union is an entity regulated by the Department of Financial Services.  Even more specifically, the alleged wrongdoing by National Union here is in relation to the fraudulent sale of insurance, an activity that is also regulated by the Department of Financial Services.  Finding both the entity and activity regulated by the department, the Court dismisses [the FDUTPA] claim;"); *Asokan v. Am. Gen. Life Ins. Co.*, 302 F. Supp. 3d 1303, 1314 (M.D. Fla. 2017) (holding that "[b]ecause there is no dispute that American General is an insurance company as that term is defined under § 501.212(4)(d), there is no cause of action for violation of FDUTPA"); *Antoine v. State Farm Mut. Auto. Ins.*, 662 F. Supp. 2d 1318, 1326 (M.D. Fla. 2009) (dismissing FDUTPA claim because "no cause of action may be maintained against [an insurance company] under the Florida Deceptive and Unfair Trade Practices Act"); *McIntyre v. Marriott Ownership Resorts, Inc.*, 2013 WL 12212640, at *3 (S.D. Fla. Dec. 10, 2013) ("Since the conduct alleged against Marriott Resorts Title Company is the type regulated by the Florida Department of Financial Services, Fla. Stat. § 624.307(1), the Plaintiffs' FDUTPA claim cannot stand, Fla. Stat. § 501.212(4).").

Because amendment of the FDUTPA claim would be futile, the dismissal of Count III should be with prejudice.  *Christman*, 416 F. App'x. at 844; *Jimenez,* 2017 WL 2833441, at *5.

### E.    The McCarran-Ferguson Act Bars Plaintiff's RICO Claim

Count IV of the Complaint for violation of the RICO Act must be dismissed because it is preempted by the McCarran-Ferguson Act, 15 U.S.C. § 1012(b).

"The McCarran-Ferguson Act ... precludes application of a federal statute in [the] face of state law 'enacted ... for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate,

---

[8]  Sections 626.9521 and 626.9541, Fla. Stat. are enforced solely by the Department of Financial Services and the Office of Insurance Regulation of the Financial Services Commission.  § 626.9561, Fla. Stat. (Department of Financial Services Office of Insurance Regulation "shall each have power … to examine and investigate the affairs of every person involved in the business of insurance in this state in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by s. 626.9521.").

impair, or supersede' the State's law." *Forsyth*, 525 U.S. at 307.  "[W]hen federal law does directly conflict with state regulation, or when application of the federal law would frustrate any declared policy or interfere with a State's administrative regime, the McCarran-Ferguson Act precludes its application." *Kondell*, 187 F. Supp. 3d at 1358.

"The [McCarran-Ferguson] Act bars the application of federal law where three requirements are met: '(1) the federal statute at issue does not specifically relate to the business of insurance; (2) the state statute at issue was enacted … for the purpose of regulating the business of insurance; and (3) application of the federal statute would invalidate, impair, or supersede the state statute.'" *Moore v. Liberty Nat'l Life Ins. Co.,* 267 F.3d 1209, 1220 (11th Cir. 2001) (internal quotations omitted)).  Each of these requirements is met in this case.

First, "RICO is not a law that 'specifically relates to the business of insurance.'" *Forsyth*, 525 U.S. at 307; *Braunstein v. Gen. Life Ins. Co.*, 2002 WL 31777635, at *3 (S.D. Fla. Nov. 19, 2002) ("it is clear that the federal Racketeer Influenced and Corrupt Organizations Act does not 'specifically relate to the business of insurance.'").

Second, "the Florida Unfair Insurance Trade Practices Act ('FUITPA') was 'enacted for the purpose of regulating the business of insurance' as enumerated by the United States Supreme Court, and thus meets the second requirement for McCarran-Ferguson preemption," *Braunstein*, 2002 WL 31777635, at *4, and § 626.9541(1)(a), Fla. Stat. regulates the precise conduct that Plaintiff contends was misleading or deceptive in this case, i.e., the advertising, offer, and sale of insurance policies to the public.

Third, because the Florida Insurance Code does not permit a private right of action for violations of § 626.9541, *see, e.g., Joseph*, 612 F. App'x. at 557, allowing Plaintiff's federal RICO claims to proceed would invalidate, impair, or supersede Florida insurance law by affording Plaintiff civil remedies not otherwise available under Florida law.  *See, e.g., Kondell*, 187 F. Supp. 3d at 1360 ("In the absence of a private right of action under Florida insurance law, the unavailability of other state causes of action permitting Plaintiff to obtain the relief she seeks in this case, and the conflict between Plaintiff's claims and the requirements of Florida insurance law, the Court concludes" that a RICO claim would "impair" Florida insurance law and should be dismissed with prejudice); *In re Managed Care Litigation*, 185 F. Supp. 2d 1310, 1321-22 (S.D. Fla. 2002) (finding absence of private right of action under Florida law dispositive and concluding that application of RICO would frustrate Florida law);

*Weinstein v. Zurich Kemper Life,* 2002 WL 32828648, **1-2 (S.D. Fla. Mar. 15, 2002) (RICO claim asserted on behalf of putative class preempted by McCarran-Ferguson Act because private right of action under § 624.155 Fla Stat. required pre-suit notification and prohibited class actions); *Braunstein*, 2002 WL 31777635, **1, 4 (concluding that RICO claim asserted on behalf of putative class preempted by McCarran-Ferguson Act because private right of action under § 624.155 Fla Stat. required pre-suit notification and prohibited class actions).

For these reasons, Count IV for violation of the RICO Act must be dismissed. Because amendment of the RICO count would be futile, the dismissal should be with prejudice. *Christman*, 416 F. App'x. at 844; *Jimenez*, 2017 WL 2833441, at *5.

## F.     Plaintiff Fails to Allege the Requisite Elements of a RICO Claim

The RICO Act provides a cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962." 18 U.S.C. § 1964(c). Section 1962, in turn, makes it "unlawful for any person employed by or associated with an enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id.* § 1962(c). In order to plead a legally sufficient civil RICO claim, Plaintiff must allege "three essential elements:" First, that the defendant committed a pattern of RICO predicate acts under 18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, third, that the defendant's racketeering activity proximately caused the injury. *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014).

In the instant case, Plaintiff's conclusory allegations fail to adequately allege causation and the existence of a RICO enterprise sufficient to state a claim under the RICO Act.

### 1.     Plaintiff Fails to Allege Causation

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). "Notably, the fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause in a RICO action – the injury must be direct." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016). "The Supreme Court has been clear that a party is only entitled to recover under RICO 'to the extent that[] he has been injured in his business or property *by the conduct constituting the violation*.' Thus, a defendant who commits an act of racketeering *is 'not liable for treble damages to everyone he might have injured by other conduct*, nor is the defendant liable to those who have not been injured.'"

16

*Id.* at 1349 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985)) (emphasis supplied). A RICO plaintiff must "plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity – here, … mail and wire fraud – was the but-for <u>and</u> proximate cause of the plaintiffs' injuries." *Spirit Airlines*, 836 F.3d at 1349 (emphasis in original). A RICO claim is insufficient "where the[] complaint asserted only the bald conclusion that the plaintiffs relied on a misrepresentation without showing how that reliance was manifested." *Id.*

Against this backdrop, Plaintiff has not alleged any injury that results *directly* from "the conduct constituting the [RICO] violation," *Sedima,* 473 U.S. at 497-98, as opposed to alleged deceptive insurance disclosures. Plaintiff alleges in Count IV that a purported scheme existed between Allianz, AA, and Jefferson. Beyond showing an incomplete screen shot of the Allianz booking window that he says is similar to the one that appeared during the ticket purchasing process and reciting language used in various sections of the AA website, Complaint, ¶ 19 n.5, Plaintiff's RICO claim is merely an abstract and threadbare recital of deceptive insurance practices for which there is no private right of action. *Joseph*, 612 F. App'x. at 557. Here, the Plaintiff's purported injuries consist of paying for a travel insurance policy and the loss of the money paid for an airline ticket. There are no factual allegations that show that the loss was directly caused by a racketeering scheme – as opposed to the likelihood that Plaintiff ignored the trip insurance policy's "terms, conditions and exclusions" that excluded coverage for work-related conflicts. In ¶ 108(1) of the Complaint, the Plaintiff states that Allianz makes an "unqualified" offer of travel protection. Plaintiff's claim is demonstrably false, as is shown by the readily available hyperlink to the "terms, conditions and exclusions" that is included in the screen-shot of the Complaint. *See* Complaint, ¶ 19 n.5.

## 2.  **Plaintiff's Allegation of a RICO Enterprise is Insufficient**

To sufficiently allege a RICO enterprise, Plaintiffs must demonstrate that the enterprise is separate and distinct from the persons constituting it, and that the "defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original). This "distinctiveness" requirement is designed to ensure that RICO is not applied to "common business relationships," *Spirit Airlines*, 126 F. Supp. 3d at 1341-42, and is reserved for conduct that "goes beyond the normal business activity." *Cisneros v. Petland, Inc.*, 2018 WL 4611612, *4

(N.D. Ga. Apr. 17, 2018).  To achieve that purpose, "[w]here businesses are alleged to be in a RICO enterprise," courts require a plaintiff to "allege activity that goes beyond normal self-interested business behavior," even if the plaintiff alleges that "the individuals making up the enterprise acted fraudulently in pursuing their own business interest." *Id.* at *5

Here, despite his naked assertion that "Allianz, AA, and Jefferson participated in an enterprise," Complaint, ¶ 105, Plaintiff fails to allege anything more than a common business relationship between an airline, an insurance company and its agent involved in a routine sale of travel insurance (irrespective of whether the disclosures on the AA website were misleading or deceptive).  Nowhere in the Complaint does the Plaintiff allege facts supporting a plausible inference these Defendants were "act[ing] to further the enterprise's affairs rather than [] [their] own business affairs" in selling and underwriting insurance policies. *Cisneros*, 2018 WL 4611612, at *5.  The allegations in the Complaint are plainly insufficient to allege that Allianz, AA, and Jefferson conducted anything more than "normal business activity," or that the members of the alleged enterprise "conducted the affairs of the enterprise" rather than their own business. *Reves,* 507 U.S. at 185.

For these reasons, Count IV for violation of the RICO count should be dismissed.

**G.     The False Advertising Claim Is Barred by § 817.41, Fla Stat.**

In Count V, Plaintiff alleges that "Allianz, together with AA and Jefferson, publicly disseminated advertising regarding its travel insurance policies that contained statements that were fraudulent, untrue and/or misleading," Complaint, ¶ 117, and that "Defendants' statements constituted misleading advertising under §817.40(5), Fla. Stat."  Complaint, ¶ 121.

Count V is plainly barred as matter of law by the express terms of § 817.47, Fla. Stat.,  which states that "[n]othing in ss. 817.40, 817.41, 817.43-817.45, and 817.47 shall be deemed to apply to advertising in connection with sales of insurance which are regulated under the insurance laws of this state." *See also Asokan v. Am. Gen. Life Ins. Co.*, 302 F. Supp. 3d 1303, 1313 (M.D. Fla. 2017) (§ 817.47, Fla. Stat., "provides an exemption 'for advertising in connection with sales of insurance which are regulated under the insurance laws of the state'").  Because the "advertising" that Plaintiff alleges is deceptive and misleading consists of statements made in Allianz's offer box in connection with Allianz's sale of travel insurance underwritten by Jefferson, Plaintiff's false advertising fails as a matter of law.  Because

amendment of the false advertising claim would be futile, the dismissal of Count V should be with prejudice. *Christman*, 416 F. App'x. at 844; *Jimenez,* 2017 WL 2833441, at *5.

Furthermore, because Florida does not permit a private right of action based on deceptive advertising in connection with sales of insurance, *see Joseph*, 612 F. App'x. at 557; § 626.9541(1)(b), Fla. Stat., Count V must also be dismissed for this independent reason.

### H.    Count I for Declaratory Relief Must Be Dismissed

If all of the common law and statutory claims are dismissed for failure to state a claim, so must Count I for declaratory relief.

The declaratory relief claim is authorized under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.  "The Declaratory Judgment Act does not expand jurisdiction.  Nor does it provide an independent cause of action.  Its operation is procedural only – to provide a form of relief previously unavailable. Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief."  *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 14 F.3d 726, 731 (2d Cir. 1993) (citation omitted).  If Allianz and Jefferson are entitled to dismissal of the underlying claims for unjust enrichment and statutory violations, the Court has no discretion but to enter an order dismissing the declaratory judgment claim. *Padilla v. Porsche Cars North America, Inc.*, 391 F. Supp. 3d 1108, 1119-20 (S.D. Fla. May 21, 2019) ("Since Plaintiffs' substantive claims have all been dismissed, the claim for declaratory relief is also dismissed.") (citations omitted); *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1199 (S.D. Fla. 2017) (dismissing declaratory relief claim where all substantive claims were dismissed); *Jolibois v. Fla. Int'l Univ. Bd. of Trustees*, 654 F. App'x. 461, 466 (11th Cir. 2016) (once the district court "granted summary judgment on Jolibois's underlying claims, … the district court no longer had any underlying jurisdictional basis to provide declaratory relief."); *Feingold v. Budner*, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008) ("A plaintiff must prevail on an underlying claim in order to be entitled to either [declaratory or injunctive] relief.").

### I.    The Claims for Unjust Enrichment, FDUTPA, and False Advertising Must Be Dismissed Because They Are Inappropriate As a Matter of Law for Class Treatment

Lastly, Plaintiff's attempt to assert claims for misleading and deceptive insurance practices on behalf of a putative class is unavailing as a matter of law.  "Under Florida law,

claims rooted in fraud and deceit are based on separate contracts or transactions and are 'inherently diverse' because 'the demands of the various defrauded parties are not only legally distinct, but each depends upon its own facts.'" *Buell*, 2007 WL 1296347, at *2 ("Florida law is clear that fraud claims are inappropriate for class treatment as a matter of law because of the individual questions presented."). Thus, no statewide or nationwide class could be certified when the claims sound in fraud, misrepresentation, or deception.

Moreover, a nationwide class cannot be premised on FDUTPA violations because "FDUTPA applies only to actions that occurred within the state of Florida." *Carnival Corp.*, 2009 WL 3861450, *6; *Hakim-Daccach v. Knauf Int'l GmbH*, 2017 WL 5634629, *7 (S.D. Fla. Nov. 22, 2017) (same).

Nationwide class treatment is also inappropriate for unjust enrichment claims because "the substantial variations in law among the fifty states [regarding unjust enrichment] 'swamp any common issues and defeat predominance,'" *Kunzelmann*, 2013 WL 139913, at *6 (quoting *Klay v. Humana, Inc.,* 382 F.3d 1241, 1261 (11th Cir. 2004)), and "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." *Vega*, 564 F.3d at 1274.

Likewise, nationwide class treatment for false advertising of insurance products under § 817.40, Fla. Stat., is improper because such claims are limited to misleading advertisements "made or disseminated before the general public of the state." § 817.41, Fla. Stat. Alleged victims outside of Florida have no standing under § 817.40.

## CONCLUSION

Allianz and Jefferson respectfully request the entry of an order dismissing all counts of the Complaint. Because amendment of the Complaint would be futile, the dismissal should be with prejudice. *E.g., Christman*, 416 F. App'x. at 844; *Jimenez,* 2017 WL 2833441, at *5.

Dated:  December 13, 2019                     Respectfully submitted,

By: **Lazaro Fernandez, Jr.**
Lazaro Fernandez, Jr.
Fla. Bar No. 716545
Email:  lfernandez@stackfernandez.com
Brian J. Stack
Fla. Bar No. 0476234
Email:  bstack@stackfernandez.com
**STACK FERNANDEZ & HARRIS, P.A.**

1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Tel: (305) 371-0001

*Attorneys for AGA Service Company and Jefferson Insurance Company*