UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:19-CV-24300-MGC

IBALDO ARENCIBIA,

    Plaintiff,

vs.

AGA SERVICES COMPANY d/b/a
ALLIANZ GLOBAL ASSISTANCE, a
Foreign For-Profit Corporation; AMERICAN
AIRLINES, INC., a Foreign For-Profit
Corporation; and JEFFERSON
INSURANCE COMPANY, a Foreign For-
Profit Corporation;

    Defendants.
_____

# AMERICAN AIRLINES, INC.'S MOTION TO SEVER AND TRANSFER ALLEGATIONS AGAINST AMERICAN AIRLINES

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND.................................................................................................................... 2

ARGUMENT ......................................................................................................................... 5

I.  THE CLAIMS AGAINST AMERICAN SHOULD BE TRANSFERRED
    TO FEDERAL COURT IN TEXAS ....................................................................... 6

    A.  Plaintiff's Agreement To The Forum Selection Clause Warrants
        Transfer ......................................................................................................... 6
    B.  The 1404 Factors Independently Warrant Transfer ....................................10

II. THIS ACTION SHOULD BE SEVERED TO FACILITATE THE
    TRANSFER OF pLAINTIFF'S CLAIMS AGAINST AMERICAN......................11

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
   571 U.S. 49 (2013) ............................................................................................*passim*

*Barnett v. Network Sols., Inc.*,
   38 S.W.3d 200 (Tex. App.—Eastland 2001) ................................................................ 9

*Bassett v. Elec. Arts, Inc.*,
   No. 13-CV-04208, 2015 U.S. Dist. LEXIS 36175 (E.D.N.Y. Feb. 9, 2015).................... 8

*Bazemore v. Jefferson Capital Sys., LLC*,
   827 F.3d 1325 (11th Cir. 2016) ..................................................................................... 7

*Berkson v. Gogo LLC*,
   97 F. Supp. 3d 359 (E.D.N.Y. 2015) ............................................................................. 8

*Bongalis-Royer v. RJ Worldwide, LLC*,
   No. 4:14-CV-330, 2015 WL 12778846 (E.D. Tex. July 16, 2015) ................................ 9

*Coffee Bean Trading-Roasting, LLC v. Coffee Holding, Inc.*,
   510 F. Supp. 2d 1075 (S.D. Fla. 2007) ......................................................................... 6

*Crede CG III, Ltd. v. 22nd Century Grp., Inc.*,
   No. 16-Civ.-3103, 2017 WL 280818 (S.D.N.Y. Jan. 20, 2017) ....................................12

*In re Daily Fantasy Sports Litig.*,
   No. 16-02677, 2019 U.S. Dist. LEXIS 206689 (D. Mass. Nov. 27, 2019) ...................... 8

*Davis v. USA Nutra Labs*,
   303 F. Supp. 3d 1183 (D.N.M. 2018) ........................................................................... 8

*Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*,
   262 S.W.3d 813 (Tex. App.—Fort Worth 2008) ........................................................... 9

*Hancock v. AT&T Co.*,
   701 F.3d 1248 (10th Cir. 2012) ..................................................................................... 8

*In re Int'l Profit Assocs., Inc.*,
   286 S.W.3d 921 (Tex. 2009) ......................................................................................... 9

*Jia v. Nerium Int'l LLC*,
   No. 3:17-CV-03057-S, 2018 WL 4491163 (N.D. Tex. Sept. 18, 2018) ........................ 9

*Klebba v. Netgear, Inc.*,
 No. 1:18-C-438, 2019 U.S. Dist. LEXIS 17833 (W.D. Tex. Feb. 5, 2019) ..................... 9

*Koster v. Lumbermens Mut. Cas. Co.*,
 330 U.S. 518 (1947) ................................................................................................... 11

*Krenkel v. Kerzner Int'l Hotels Ltd.*,
 579 F.3d 1279 (11th Cir. 2009) ................................................................................ 9

*McArthur v. Kerzner Int'l Bah., Ltd.*,
 607 F. App'x 845 (11th Cir. 2015) ........................................................................... 7

*Moghaddam v. Dunkin' Donuts, Inc.*,
 No. 02-60045-CIV, 2002 U.S. Dist. LEXIS 14952
 (S.D. Fla. Aug. 13, 2002) .................................................................................. 10, 11

*Nelson v. Aramark Sports & Entm't Servs., LLC*,
 No. 2:14-cv-00474, 2015 WL 1014579 (D. Utah Mar. 9, 2015) ............................... 12

*Orion Marine Constr., Inc. v. Marine Structures, LLC*,
 No. 8:19-cv-1622, 2019 U.S. Dist. LEXIS 175287 (M.D. Fla. Oct. 9, 2019) .................. 9

*Piper Aircraft Co. v. Reyno*,
 454 U.S. 235 (1981) ................................................................................................... 10

*Retterath v. Homeland Energy Sols., LLC*,
 No. 13-80942-CIV, 2014 U.S. Dist. LEXIS 57259 (S.D. Fla. Feb. 20, 2014) ............... 6, 7

*Segal v. Amazon.com, Inc.*,
 763 F. Supp. 2d 1367 (S.D. Fla. 2011) ................................................................... 8, 9

*SSAB Ala., Inc. v. Kem-Bonds, Inc.*,
 No. 17-0175-WS-C, 2017 U.S. Dist. LEXIS 204021
 (S.D. Ala. Dec. 12, 2017) ........................................................................................ 2, 11

*Stiles v. Bankers Healthcare Grp., Inc.*,
 637 F. App'x 556 (11th Cir. 2016) ........................................................................... 6

*Temple v. Best Rate Holdings LLC*,
 360 F. Supp. 3d 1289 (M.D. Fla. 2018) ................................................................. 7, 8

*Valspar Corp. v. E.I. DuPont de Nemours & Co.*,
 15 F. Supp. 3d 928 (D. Minn. 2014) ..................................................................... 11, 12

**STATUTES**

28 U.S.C. § 1391(b)(1) ................................................................................................. 7

28 U.S.C. § 1404 ................................................................................................... 6, 10

28 U.S.C. § 1404(a) ............................................................................................. *passim*

**RULES**

Fed. R. Civ. P. 21 .......................................................................................... 2, 11, 12

Pursuant to Federal Rule of Civil Procedure 21 and 28 U.S.C. § 1404(a), Defendant American Airlines, Inc. ("American") respectfully moves to sever and transfer the claims brought by putative class member Ibaldo Arencibia ("Plaintiff") against American to the Northern District of Texas. In support, it states as follows:

## INTRODUCTION

This case stems from Plaintiff's purchase of a trip insurance policy from Allianz on August 17, 2019, while purchasing travel from Miami, Florida to Bogota, Colombia on American's website. On August 13, 2019, just four days earlier, Plaintiff joined American's AAdvantage loyalty program. Declaration of Mariana A. Fonseca Medina (hereinafter "Medina Decl.") at Ex. A. Pursuant to that free and entirely voluntary program, Plaintiff obtained the valuable opportunity to earn miles that could be redeemed for free flights, upgrades, and other benefits on American and its partner airlines. In exchange for those benefits, Plaintiff affirmatively clicked his agreement to the AAdvantage terms and conditions, including American's site usage policy. *Id.* at Exs. B-C. By virtue of that covenant, Plaintiff agreed, among other things, that:

> Any lawsuit brought by you related to your access to, dealings with, or use of the Site must be brought in the state or federal courts of Tarrant County, Texas. You agree and understand that you will not bring against AMR Corporation, American Airlines, or any of its affiliated entities, agents, directors, employees, and/or officers any class action lawsuit related to your access to, dealings with, or use of the Site.

*Id.* at Ex. D. Notwithstanding Plaintiff's agreement to those terms only days before the incident giving rise to his claims, Plaintiff brought this suit against American based on his access to, dealings with, or use of American's website in the Southern District of Florida— not Tarrant County, Texas (in the Northern District of Texas)—and seeks to pursue a class action lawsuit. In so doing, he flatly breached his contractual promise. This case should be

1

transferred to a Northern District of Texas federal court located in Tarrant County in accordance with the parties' agreement.[1]

This Court is authorized under 28 U.S.C. § 1404(a) to transfer this action "to any other district or division where [the matter] might have been brought or to any district or division to which all parties have consented." Because "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases," *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (internal quotation marks and citation omitted), the Northern District of Texas is the appropriate venue for Plaintiff's claims against American. Both private and public interest factors also support a transfer. Here, the Court will need to sever the claims against American from those against co-defendants AGA Service Company d/b/a Allianz Global Assistance and Jefferson Insurance Company (hereinafter "Allianz" and "JIC") prior to the transfer. Courts routinely find, however, that a party's agreement to a forum selection clause should be enforced even when doing so requires a court to sever the claims against the party to the contractual forum selection clause from proceedings against multiple defendants. *See, e.g.*, *SSAB Ala., Inc. v. Kem-Bonds, Inc.*, No. 17-0175-WS-C, 2017 U.S. Dist. LEXIS 204021, at *13-16 (S.D. Ala. Dec. 12, 2017) (collecting cases). As such, this Court should sever the action under Rule 21 and transfer Plaintiff's claims against American to the Northern District of Texas.

## BACKGROUND[2]

American sells airline tickets to its customers for travel across the United States and the world. Compl. ¶ 51. One way customers can purchase flights from American is by visiting its website. *Id.* ¶ 46. Allianz contracts with American for the right to advertise trip insurance on American's website. *Id.* ¶¶ 31, 54. During the process for booking flights on American's website, customers are presented with an offer from Allianz to purchase travel protection policies ("trip insurance") from Allianz. *See id.* ¶¶ 2, 18-19, 35. "Allianz's offer of insurance"

---

[1] Plaintiff also agreed that he would not bring a class action lawsuit relating to his access to, dealings with, or use of American's website. For efficiency's sake this Court could strike Plaintiff's class-wide allegations now, or it may leave that step to the transferee Texas court.

[2] In order to bring this motion as promptly as is possible, American is basing the motion on the facts pleaded in the complaint as well as certain limited documents that establish Plaintiff's agreement to the clause at issue. American does not concede the accuracy of Plaintiff's fact allegations in so doing.

2

includes various representations and disclosures regarding the contents of the offer. *Id.* ¶¶ 19, 24-25, 28, 35-36, 47-48.

On August 17, 2019, Plaintiff purchased a roundtrip ticket on American's website to fly on American from Miami to Bogota, Colombia. *Id.* ¶¶ 18, 27. During the booking process, Allianz offered to sell trip insurance to Plaintiff. *Id.* ¶¶ 4, 18-20. Plaintiff principally claims that Allianz's offer misrepresented the nature and substance of his trip insurance policy. *See, e.g., id.* ¶¶ 19, 69(a), 79. Plaintiff alleges that American provides "[a]ssistance" to Allianz's scheme by permitting Allianz to utilize American's "online platform"—*i.e.* American's website—to make its allegedly misleading trip insurance offer to customers like Plaintiff. *Id.* ¶ 48.

On August 13, 2019, four days before Plaintiff purchased the trip insurance policy at issue here, Plaintiff joined American's voluntary and valuable AAdvantage program. *See* Medina Decl. ¶ 3 and Ex. A. Passengers who are members of American's AAdvantage program are eligible to earn miles when they fly on American or one of its codeshare partners, as well as through a variety of other means, such as using a co-branded credit card. *See id.* at ¶ 2. Many American customers elect to join AAdvatage to use such miles to obtain free domestic or international airline tickets, upgrade their class of travel, and receive other benefits. *Id.* In addition, AAdvantage members are eligible to earn status that affords repeat customers the opportunity to secure complimentary upgrades and earn miles more quickly. *Id.*

In exchange for the valuable opportunity to participate in that benefit program, AAdvantage members agree to various terms and conditions, including American's site usage policy. In order to join AAdvantage on American's website, a customer must click a box stating "I agree to the AAdvantage terms/conditions." *Id.* at 4 and Ex. B. The phrase "terms/conditions" are displayed in blue text with an accompanying arrow, thereby indicating the existence of a hyperlink setting forth those terms on a separate page. *Id.* at 5 and Ex. B.

3

On August 13, 2019, the terms and conditions to which Plaintiff agreed provided that "[t]he AAdvantage program Terms and Conditions are governed by and to be interpreted in accordance with the laws of the State of Texas." *Id.* at Ex. C.  They also provided that "[b]y accessing your AAdvantage account on AA.com, you agree to the AA.com site usage policy." *Id.*  That covenant was followed by a brightly highlighted hyperlink at which Plaintiff was able to "[v]ew the AA.com site usage policy." *Id.*[3]  The site usage policy contains a governing law provision, a mandatory forum selection clause, and a class action waiver.  In relevant part, the policy states:

> Forum for actions, governing law, and procedural restrictions
>
> You agree that this Agreement is made and entered into in Tarrant County, Texas.  You agree that Texas law governs this Agreement's interpretation and/or any dispute arising from

---

[3] The site usage policy is also available under the hyperlink identified as "Legal, privacy, copyright" in a box that appears at the bottom of the homepage on American's website.

> your access to, dealings with, or use of the Site, without regard to conflicts of law principles. Any lawsuit brought by you related to your access to, dealings with, or use of the Site must be brought in the state or federal courts of Tarrant County, Texas. You agree and understand that you will not bring against AMR Corporation, American Airlines, or any of its affiliated entities, agents, directors, employees, and/or officers any class action lawsuit related to your access to, dealings with, or use of the Site.

*See* Ex. D (Site Usage Policy).[4]

On August 17, 2019, four days later, Plaintiff purchased a ticket from Miami, Florida to Bogota, Colombia on American's website. In so doing, he logged in and entered his AAdvantage number on American's website. Nonetheless, when Plaintiff brought suit two months later, he did so in the Southern District of Florida, and proposed to bring his claims as a class action lawsuit. *See generally* Compl. No discovery has taken place in this case and no substantive motions have been decided. On December 13, 2019, American moved to dismiss Plaintiff's claims against it, and specifically indicated that it planned to soon file a motion to transfer this case. American now files that motion.

## ARGUMENT

By expressly affirming his agreement to the AAdvantage terms and conditions, Plaintiff agreed that lawsuits stemming from his use of American's website would be brought in the state and federal courts of Tarrant County, Texas. Courts applying Texas (and Florida) law have repeatedly found such agreements to be enforceable. This Court should afford American the benefit of its bargain and enforce the forum selection clause to which Plaintiff agreed in exchange for the valuable benefits of becoming an AAdvantage member. Because this case has multiple defendants, the proper course is to sever Plaintiff's claims against American, and transfer them to the parties' contractually agreed forum.

---

[4] The site usage policy contains other terms that are relevant to this matter as well. American reserves all rights with respect to all claims and defenses it may have under the site usage policy, the AAdvantage terms and conditions, and any other terms and conditions governing customers' use of American's website, the AAdvantage Program, or otherwise.

5

I. **THE CLAIMS AGAINST AMERICAN SHOULD BE TRANSFERRED TO FEDERAL COURT IN TEXAS**

Pursuant to 28 U.S.C. § 1404, this Court is entitled to transfer any civil action "to any other district or division where [the matter] might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The action against American should be transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1404 for two independent reasons. First, Plaintiff brought this action in violation of the forum selection clause on American's website, by which Plaintiff affirmatively obligated himself to bring any claims exclusively in Tarrant County, Texas. Under Supreme Court authority, that alone warrants transfer. Second, even if there were no forum selection clause, the factors relevant to a Section 1404(a) analysis weigh strongly in favor of transfer.

A. **Plaintiff's Agreement To The Forum Selection Clause Warrants Transfer**

Section 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). When evaluating a Section 1404(a) motion, "*a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.*" *Id.* at 63 (emphasis added) (internal quotation marks and citation omitted).[5] In such situations, "'the plaintiff's choice of forum merits no weight.'" *Retterath*, 2014 U.S. Dist. LEXIS 57259, at *24 (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 63). "'Only under extraordinary circumstances unrelated to the convenience of the parties' should a court decline to enforce a forum-selection clause." *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016) (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 62); *see also Coffee Bean Trading-Roasting, LLC v. Coffee Holding, Inc.*, 510 F. Supp. 2d 1075, 1077 (S.D. Fla. 2007) (Martinez, J.). "The party seeking to avoid the forum selection clause bears the burden of showing exceptional circumstances,

---

[5] In *Atlantic Marine*, the Supreme Court explained that a valid forum selection clause requires a court to alter its analysis in three ways: (1) the burden shifts to the plaintiff to show that a forum selection clause is unenforceable; (2) a court may not consider arguments about the parties' private interests because when parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient, or for their pursuit of the litigation; and (3) when a party bound by a forum selection clause files suit in a different forum, a transfer of venue will not carry with it the original venue's choice-of-law rules because not only would it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship. *See* 571 U.S. at 63-66.

predicated on public interest considerations to justify disturbing the forum selection clause." *McArthur v. Kerzner Int'l Bah., Ltd.*, 607 F. App'x 845, 847 (11th Cir. 2015). "When a district court solely considers public interest factors, those factors will 'rarely defeat a transfer motion,' and the 'practical result is that forum-selection clauses should control except in unusual cases.'" *Retterath v. Homeland Energy Sols., LLC*, No. 13-80942-CIV, 2014 U.S. Dist. LEXIS 57259, at *24 (S.D. Fla. Feb. 20, 2014) (quoting *Atl. Marine Const. Co.*, 571 U.S. at 64).

Here, American's site usage policy expressly specifies that "[a]ny lawsuit brought by you related to your access to, dealings with, or use of the Site *must* be brought in the state or federal courts of Tarrant County, Texas." Medina Decl. Ex. D (emphasis added). Plaintiff accepted that policy when he voluntarily and affirmatively agreed to the AAdvantage terms and conditions when he joined the AAdvantage program only days before the events giving rise to his complaint. And, given that Plaintiff's claims concern the content of American's website, observed when purchasing trip insurance from Allianz, marketed on American's website, in the course of purchasing a ticket on American's website, his claims necessarily fall well within the scope of the forum selection clause. The Court therefore should enforce Plaintiff's agreement to the AAdvantage terms and conditions by transferring this case to the Northern District of Texas.[6]

When joining the AAdvantage program, Plaintiff was required to affirmatively mark his agreement to the AAdvantage terms and conditions by clicking a box next to the statement: "I agree to the AAdvantage terms/conditions." Such agreements, with which "virtually every Internet user is familiar," have "become known as clickwrap agreements— 'agreements [formed by] requiring a computer user to "consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with [a] . . . transaction."'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1327 (11th Cir. 2016) (citation omitted). "Because clickwrap agreements require the user to physically manifest assent, the user is 'said to be put on inquiry notice of the terms assented to.'" *Temple v. Best Rate Holdings LLC*, 360 F. Supp.

---

[6] Transfer of Plaintiff's claims to Texas would be proper even if Plaintiff had not consented to the forum selection clause because American's principal place of business is in Texas and, therefore, its claims against American "might have been brought" in that district. 28 U.S.C. § 1391(b)(1); 28 U.S.C. § 1404(a).

7

3d 1289, 1302 (M.D. Fla. 2018) (quoting *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015)).[7]

"In Florida and the federal circuits . . . clickwrap agreements are valid and enforceable contracts." *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (Cooke, J.) (citation omitted); *see also Hancock v. AT&T Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012) (citation omitted) ("Clickwrap agreements are increasingly common and 'have routinely been upheld.'" (citation omitted)); *Berkson*, 97 F. Supp. 3d at 395 (citation omitted) ("[E]very [lower] court to consider the issue has found 'clickwrap' licenses, in which an online user clicks 'I agree' to standard form terms, enforceable." (citation omitted)).

That conclusion is not altered when, as is commonplace, the terms and conditions are contained in a hyperlink prominently displayed from the page on which a party clicks agreement to them. Rather, "'[f]ederal courts have consistently enforced clauses contained in clickwrap agreements' similar to the one at issue here, where the agreement is 'presented via a hyperlink to a page separate from the one containing the box or button manifesting assent.'" *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190-91 (D.N.M. 2018) (quoting *Bassett v. Elec. Arts, Inc.*, No. 13-CV-04208, 2015 U.S. Dist. LEXIS 36175, at *12-13 (E.D.N.Y. Feb. 9, 2015)). That is not surprising, because "on the cusp of the third decade of the twenty-first century it can fairly be said that following a hyperlink is like turning a page in a printed document. Any reasonable viewer would realize that access to the text of the terms would be simple and immediate." *In re Daily Fantasy Sports Litig.*, No. 16-02677, 2019 U.S. Dist. LEXIS 206689, at *53 (D. Mass. Nov. 27, 2019).

*Segal* is on all fours with this case. There, this Court upheld a forum selection clause contained within a clickwrap agreement setting forth terms and conditions. The court rejected the plaintiff's claim that such forum selection clauses are fundamentally unfair or that their placement within clickwrap terms and conditions rendered them invalid. Instead, it found

---

[7] Clickwrap agreements are distinguished from so-called "browsewrap" agreements which typically do not involve any active role by the user and instead "consist[] of a notice on a website stating that the user is agreeing to and is bound by the website's terms of service by merely using the website." *Temple*, 360 F. Supp. 3d at 1302 (citing *Berkson*, 97 F. Supp. 3d at 395).

8

that the forum selection clause was valid and enforceable. *See Segal*, 763 F. Supp. 2d at 1369-70. The same result follows here.

The same conclusions follow under Texas law, which expressly governs the interpretation of the AAdvantage terms and conditions. *See* Ex. C. "'Texas courts recognize the validity of ***clickwrap*** agreements.'" *Klebba v. Netgear, Inc.*, No. 1:18-C-438, 2019 U.S. Dist. LEXIS 17833, at *10 (W.D. Tex. Feb. 5, 2019) (quoting *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 818 n.1 (Tex. App.—Fort Worth 2008, no pet.) (emphasis added); *Jia v. Nerium Int'l LLC*, No. 3:17-CV-03057-S, 2018 WL 4491163, at *3 (N.D. Tex. Sept. 18, 2018) ("It is well established under Texas law that assent through an affirmative 'click' is sufficient to bind the parties."); *Bongalis-Royer v. RJ Worldwide, LLC*, No. 4:14-CV-330, 2015 WL 12778846, at *5 (E.D. Tex. July 16, 2015) ("Texas courts have recognized the validity of electronic contracts . . . [and] have repeatedly upheld the validity of 'clickwrap' agreements.").

Under Texas law, "[a] party who signs a document is presumed to know its contents." *Klebba*, 2019 U.S. Dist. LEXIS 17833, at *9 (quoting *In re Int'l Profit Assocs., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009)). "Accordingly, 'parties to a contract have an obligation to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation.'" *Id.* (quoting *In re Int'l Profit Assocs., Inc.*, 286 S.W.3d at 924). "These same rules 'appl[y] to contracts which appear in an electronic format.'" *Id.* at *9-10 (quoting *Barnett v. Network Sols., Inc.*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied).

Accordingly, Plaintiff expressly assented to the AAdvantage terms and conditions, including the forum selection clause in American's site usage policy, in return for valuable consideration. Because "[t]he law is clear that a valid forum-selection clause should be given controlling weight in all but the most exceptional circumstances,"[8] *Orion Marine Constr., Inc.*

---

[8] The Eleventh Circuit has explained that an applicable forum selection clause shall be held valid and enforceable absent extraordinary circumstances, such as that "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). None of those considerations are remotely applicable here.

9

*v. Marine Structures, LLC*, No. 8:19-cv-1622, 2019 U.S. Dist. LEXIS 175287, at *2-3 (M.D. Fla. Oct. 9, 2019)—and no exceptional circumstances cut against transfer here—this Court should transfer American's claims to the Northern District of Texas.

      **B.**      **The 1404 Factors Independently Warrant Transfer**

Transfer to Texas would be appropriate here even in the absence of the forum selection clause. A court evaluating a motion to transfer under § 1404 absent a forum selection clause is directed to consider a variety of private and public interest factors. When evaluating private interests, courts should consider the "'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Atl. Marine Constr. Co.*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (quoting *Piper Aircraft Co.*, 454 U.S. at 241 n.6).

Both the private and public interest factors weigh in favor of a transfer here. "The convenience of witnesses, however, is a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a)." *Moghaddam v. Dunkin' Donuts, Inc.*, No. 02-60045-CIV, 2002 U.S. Dist. LEXIS 14952, at *8 (S.D. Fla. Aug. 13, 2002) (internal quotation marks and citation omitted). Here, almost all of the witnesses (as well as the documentary evidence) relevant to Plaintiff's claims against American will be located in Texas, where American is headquartered, or in Virginia, where Allianz is headquartered. No witnesses other than Plaintiff are likely to be located in Miami. Texas is thus a far more convenient forum than Miami to expected witnesses in this case. As such, the private interest factors favor trying Plaintiff's claims against American in Texas. Similarly, because the AAdvantage terms and conditions provide that "this Agreement is made and entered into in Tarrant County, Texas," that the Agreement is governed by Texas law, and because American is a Texas company, it has a strong interest in litigating this case in Texas, in front of a court familiar with Texas law. By contrast, because Plaintiff proposes to bring a nationwide class action, there is no

10

particularized interest in bringing this case in Florida.  Indeed, the plaintiff's choice of forum is afforded substantially less weight in class actions.  *See id.* at *6.[9]

## II.     THIS ACTION SHOULD BE SEVERED TO FACILITATE THE TRANSFER OF PLAINTIFF'S CLAIMS AGAINST AMERICAN

By its terms, 28 U.S.C. § 1404(a) authorizes the transfer of "any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  There is no question that Plaintiff could have sued American in Texas, where it is at home.  Here, however, Plaintiff sued American (in addition to other defendants) that neither are incorporated, nor have their primary place of business in Texas.  Moreover, the forum selection clause at issue governs a contract between Plaintiff and American to which those additional defendants are not parties.

Courts routinely address such scenarios via use of Federal Rule of Civil Procedure 21, which empowers a court to "sever any claim against a party."  By severing those claims directed against one party subject to a forum selection clause from those of another party to which the forum selection clause does not apply, a court furthers the Supreme Court's recognition that "[w]hen parties have contracted in advance to litigate disputes in a particular forum, … 'the interest of justice' is served by holding parties to their bargain."  *Atl. Marine Constr. Co.*, 571 U.S. at 66.  As such, courts confronted by circumstances similar to those here freely sever actions involving multiple parties to facilitate the transfer of claims against a particular party to a contractually agreed forum.  *See SSAB Ala., Inc.*, 2017 U.S. Dist. LEXIS 204021, at *13-16 (collecting cases).

Although severance necessarily results in two actions in different districts addressing the facts underlying the case at hand, courts have repeatedly rejected the argument that the multiplicity of actions cuts against severance, instead recognizing that "[a]llowing efficiency and economy to rule the day would effectively swallow *Atlantic Marine's* holding in every case with multiple defendants."  *Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928,

---

[9] "Where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."  *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).

11

934-35 (D. Minn. 2014); *see id.* ("[T]he Court does not believe the efficiency and economy achieved by trying interrelated claims in one forum should trump the forum-selection clauses agreed to by Valspar"); *Nelson v. Aramark Sports & Entm't Servs., LLC*, No. 2:14-cv-00474, 2015 WL 1014579, at *3 (D. Utah Mar. 9, 2015) ("Lower courts have found that *Atlantic Marine*'s unequivocal language regarding the force of forum-selection clauses applies even when it results in duplicative litigation."); *Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 16-Civ.-3103, 2017 WL 280818, at *16 (S.D.N.Y. Jan. 20, 2017) (granting severance and enforcing forum selection clause in light of "concern[] that limiting *Atlantic Marine* to its precise facts, to govern only in two-party cases to which only one forum selection clause applies, would allow 'any clever party to a lawsuit' to plead around a valid forum selection clause").

Here, as in *Atlantic Marine*, the interests of justice favor holding Plaintiff to his bargain—to the terms and conditions to which he agreed in exchange for the voluntary and valuable benefits of participation in American's AAdvantage loyalty program. And there is limited risk of inefficiency in any event, as both American and Allianz have presented strong arguments setting forth why dismissal against both parties is likely—whether resolved by this Court or one in Texas.

## CONCLUSION

For the foregoing reasons, this Court should sever the claims against American under Federal Rule of Civil Procedure 21, and transfer this action to Texas pursuant to 28 U.S.C. § 1404(a).

**Local Rule 7.1(a)(3) Certification**

Counsel for the movant emailed counsel for Plaintiff regarding the relief requested in this motion to seal on the same day this motion is being filed, and has not received a response as of the time of filing this motion. American Airlines, Inc. will update the record with Plaintiff's position promptly upon receipt.

Dated:  December 27, 2019	Respectfully submitted,

/s/ Humberto H. Ocariz
Humberto H. Ocariz
hocariz@shb.com
Florida Bar No.: 740860
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.358.5171
Facsimile: 305.358.7470

-- and --

James E. Brandt (*Pro Hac Vice*)
james.brandt@lw.com
Michael E. Bern (*Pro Hac Vice*)
michael.bern@lw.com
**LATHAM & WATKINS, LLP**
885 Third Avenue
New York, New York 10022-4834
Telephone: 212.906.1200
Facsimile: 212.751.4864

*Attorneys for American Airlines, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of December, 2019, a true and correct copy of the foregoing was filed using the Court's CM/ECF system and was served on all counsel or parties of record on the attached Service List by the method indicated.

By: /s/ Humberto H. Ocariz
HUMBERTO H. OCARIZ

**SERVICE LIST**

| | |
|---|---|
| Eduardo A. Maura, Esq.<br>eayala@ayalalawpa.com<br>Luis F. Quesada, Esq.<br>lquesada@ayalalawpa.com<br>**Ayala Law, P.A.**<br>1390 Brickell Avenue, 335<br>Miami, Florida 33131<br>Telephone: 305.570.2208<br>Facsimile: 305.503.7206<br><br>(Service via CM/ECF)<br>*Counsel for Plaintiff*<br><br>Felipe Fulgencio, Esq.<br>felipe@fulgenciolaw.com<br>**Fulgencio Law, P.L.L.C.**<br>105 S. Edison Avenue<br>Tampa, Florida 33606<br>Telephone: 813.463.0123<br>Facsimile: 813.670.1288<br><br>(Service via CM/ECF)<br>*Co-Counsel for Plaintiff*<br><br>Jorge A. Garcia-Menocal, Esq.<br>jgm@gmilaw.com<br>**Garcia-Menocal, Irias & Pastori LLP**<br>368 Minorca Ave<br>Miami, FL 33134<br>Telephone: 305.400.9652<br>Facsimile: 305.520.0195<br><br>(Service via CM/ECF)<br>*Co-counsel for Plaintiff* | Humberto H. Ocariz, Esq.<br>hocariz@shb.com<br>**SHOOK, HARDY & BACON L.L.P.**<br>Miami Center, Suite 3200<br>201 South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone: 305.358.5171<br>Facsimile: 305.358.7470<br><br>(Service via CM/ECF)<br><br>James E. Brandt, Esq.<br>james.brandt@lw.com<br>Michael E. Bern, Esq.<br>michael.bern@lw.com<br>**LATHAM & WATKINS, LLP**<br>885 Third Avenue<br>New York, New York 10022-4834<br>Telephone: 212.906.1200<br>Facsimile: 212.751.4864<br><br>(Service via CM/ECF)<br>*Counsel for American Airlines, Inc.*<br><br>Lazaro Fernandez, Esq.<br>lfernandez@stackfernandez.com<br>**Stack Fernandez & Harris P.A**.<br>1001 Brickell Bay Dr, Ste 2650<br>Miami, FL 33131<br>Telephone: 305.371.0001<br>Facsimile: 305.371.0002<br><br>(Service via CM/ECF)<br>*Counsel for Defendants, AGA Service Company & Jefferson Insurance Company* |